M. A. HUMPHRIES *v.* MARY B. HUMPHRIES ET AL.

**Trusts—Payment by Agent of Balance Due on an Estate.**
A payment by a father, of the balance due on land purchases made by his deceased son, and taking the deeds thereto in his own name, will vest him with the equitable title only, in trust for the heirs.

**Same—Devise.**
A devisee of the father would not be invested with any other rights, than those devised, by said deceased father.

**Partnership—Right of Silent Partner—Power by Sale—Revoked by Death of Partner.**
Taylor and Humphreys bought for speculation a large tract of land, and Taylor had parol instructions to sell same for a profit. **Held** that upon the death if Humphreys, Taylors right to sell was revoked.

**Same—Principal and Agent.**
Nor would such contingent right of sale in the agent or trustee, convert the land into money, nor impress on it the quality of personalty, though Humphreys had purchased it on speculation.

**Descent and Distribution—Advances by Parent to Save the Estate of Son.**
A bequest of all advances made by a father to protect a heavily involved estate of his son, will take them out of a contingent right of the widow and devolve on her the settlement of all debts thus made, out of her interest as devisee.

**Same—Right of Devisee to be Reimbursed for Legacy Lost in Litigation.**
Where grandsons take by devise, and not as heirs, such part of the devise as is lost to them by reason of defective title of lands must be made up from other undevised assets of the testator, before a prorata contribution can be demanded from the other legatees.

**Same.**

 If such assets be insufficient, then for the deficit, a pro rata contribution from the other legatees will be enforced.

**Wills—Descent and Distribution—Renouncing of Terms by Widow.**

 Upon renouncing of the provisions, of a will, a bequest of rents and profits of one third of certain lands, for life, will revert back and become a part of the undisposed of estate of the testator.

APPEAL FROM WOODFORD CIRCUIT COURT.

March 10, 1870.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Samuel P. Humphries, husband of appellant Margaret, died in December, 1857, devising all his estate to his surviving wife, after the payment of his debts. He owned a large real estate scattered through different parts of Illinois, upon which several tracts there existed, more or less, special liens, and to some of which he only held equitable title, whilst the legal title to some was in a trustee.

Besides these special liens he was largely indebted, more than his personal estate would pay.

He resided in Woodford county, Kentucky, when he died, though he departed this life in New Mexico. He appointed his father, D. C. Humphries, also of Woodford county, his executor.

He had resided on a farm in Woodford given by parol to him by his father, which his father sold soon after his death, professedly to save his Illinois lands from sale for his debts.

D. C. Humphries made large advances on account of his deceased son, professedly for the benefit of his wife and children and to save the real estate from sale.

Among his real estate was an undivided fourth in certain lands which he had bought from W. T. Scott, and held a memorandum in writing signed by both as to it. D. C. Humphries, as executor, undertook in writing to pay Scott the remainder due on it, settled by them at $1,099.19, in March, 1863. August 15, thereafter, he took Scott's deed to himself, individually, for this 560 acres of land for the recited consideration of $1,114.08.

S. P. Humphries had bought from Brown over 700 acres, at

$14,000, half of which he paid the following spring, leaving the remainder to be paid in two equal annual installments. This land adjoined T. C. Taylor's 400 acres, in Logan county, Illinois, and which was put in the co-partnership formed for farming purposes between said Taylor and decedent, S. P. Humphries, and which was to continue for five years, notwithstanding the latter should die in the mean time, this land was then valued at $10 per acre.

S. P. Humphries having left Brown's bond with Taylor, the deed to the land was made to him, D. C. Humphries being present and consenting. D. C. Humphries paid the last installment of $3,500 with accumulated interest on this land.

Taylor paid the remainder of $1,500, which was due on the other $3,500 installment when S. P. Humphries died.

There was a house and lot in Bloomington, bought by the firm and paid with its means, for $800.

Subsequently, in settling the partnership accounts, and D. C. Humphries acting both as executor on his deceased son's estate and as agent for his widow, under a plenary power of attorney with the right of substitution, and he then professing to act for the benefit of his deceased son's widow and children, Taylor conveyed the whole of this partnership tract, save a small portion, the title of which was in Lecker, who also conveyed it to D. C. Humphries, but received from him neither money nor other consideration than the settlement of their partnership accounts, and one-half of which Taylor says belonged to S. P. Humphries.

S. P. Humphries had bought of Wilson 960 acres, known as the Illiopolis tract, on speculation, which Taylor was to sell and pay one-third of the profits to Humphries' brother-in-law, Stribbling, and retain one-third for his own compensation, and to facilitate such selling the title was made to Taylor.

S. P. Humphries, on his brother-in-law's order, gave his mother-in-law his note for $1,200, on account of this contract for one-third profit.

There was a vendor's lien on this land for $1,800, which D. C. Humphries liquidated.

D. C. Humphries professing to act as the agent and friend of his deceased son's widow and children and as executor for his estate, procured a deed from Taylor to this tract of land, paying nothing but the $1,800, dated March 12, 1861. D. C. Humphries

wrote to Sims of May 3, 1864, in which letter he recognized this land as that of his daughter-in-law and her children; this tract is proved to be worth $30,000.

D. C. Humphries was not authorized by appellant, Margaret, to take these lands by removing the incumbrances, nor in any other manner, but as her agent he was authorized to sell them when a sale could be made such as his judgment approved.

There is no evidence in the record that he ever proved said will or had it recorded in Illinois, nor that he ever, by order of any court, undertook its execution there, nor do we know from anything in this record that he could, by the laws of Illinois, as executor, have anything whatever to do with them; so far as any legal presumption arises from the developed facts, it is that he acted as agent for his deceased son's widow.

As between himself and her then the most he could claim would be to be reimbursed his outlays for said lands and then to convey the legal title to her, he holding the same all the time for such trusts. His devisee can stand in no better condition unless this legal and equitable relation be changed by the fourth clause of D. C. Humphries' will.

As the Iliopolis tract had not been sold when S. P. Humphries died, Taylor's right to sell was revoked by his death, Taylor's compensation being dependent upon a sale for profit and as this had not taken place he ceased to have either a right to sell or interest in the profits, or the land. Nor did such contingent right of sale in the agent or trustee convert the land into money, nor impress on it the quality of personalty, though Humphries had purchased it on speculation. *Clay & Craig vs. Hart, 7 Dana., 11.*

The Bloomington house and lot, however, having been purchased with the profits of the farm and the partnership assets of a personal nature, which gave D. C. Humphries the right to take it at a fair valuation for advances which he had made to the estate.

D. C. Humphries having devised the Illiopolis tract of 960 acres of land and the Bloomington house and lot to his daughter Mary, proceeded to devise, by the fourth clause of his will as follows:

"I give to my grandsons, D. C. Humphries and T. S. Humphries, the land I purchased from T. G. Taylor and Telfer, in Logan county, Illinois, containing 1,200 acres,

more or less. I also give to my grandsons, D. C. and T. S. Humphries, my claim on their father's estate, for money paid more than received as will appear by a reference to a settlement in county court of Woodford county, which sums of money I advanced rather than sacrifice his property in Chicago, Chenoah, Kankakee and Christian counties, Illinois. I give the above *property* to my grandsons upon condition that my daughter, Margaret A. Humphries, wife of my son Samuel, is to have one-third of the income of the *rents* and the *hire* of the property above described given by me, during her life, and upon further condition that no claim is to be set up against my estate in consequence of my being executor of the estate of S. P. Humphries."

It will be noticed that these conditions apply solely to the devise of the land and slaves and not to the bequest of the advances made by the testator for his son's estate.

Further, all the then recognized indebtedness of his son's estate, because of such advances, is bequeathed to his said two grandsons free of condition, and next that the last condition that attach to the land and slaves, is that nothing be asserted against his estate in consequence of his executorship, not that his acts as agent of their mother was also to be embraced, for these are as distinct as two duties can well be, one the legal duty of properly executing the will of a decedent, the other the faithful performance of an agency for a living constituent, though both may possibly relate to the same property.

Then whatever sums he had advanced for his deceased son to save his estate, and not connected with these lands, which as agent for their mother, he had acquired, will in any view belong to these two minor grandsons. But as their mother, Margarett A. Humphries, will be entitled to recover the Illiopolis tract and half the partnership farm of 1,200 acres in Logan county, and as the amount D. C. Humphries had credited his son's estate therefor was not bequeathed to his two grandsons, and as the widow as the sole devisee of her deceased husband, must pay all his debts, these amounts, so credited by D. C. Humphries, to his son's estate, will now be stricken therefrom and leave her indebted that much to his estate, to be disposed of as so much undevised assets by D. C. Humphries' executors; this of course includes all advances made

by D. C. Humphries, on account of said lands in order to obtain the title, and which she would be compelled even as a *cestui que usee* to pay before she could demand the title, but this not being equal to the other sum is included in it.

Margarett A. Humphries will then get the entire real estate of her husband by paying to her two sons the amount which D. C. Humphries had advanced and bequeathed to them, and then paying to D. C. Humphries' executor the sums which he in said settlement had credited the estate of S. P. Humphries with on account of his taking said land.

As the two minor grandsons take as devisees and not as heir at law of the testator D. C. Humphries, and lose half the devise of the 1,200 acres of land, and as Mary Humphries loses the Illiopolis tract of 960 acres, they must be compensated for the value of these losses at the time of testator's death, ratably, out of the undevised assets and realty before a *pro rata* contribution can be demanded from the other legatees.

After exhausting said assets and realty, not devised, then for any deficit a *pro rata* contribution from the other legatees should be enforced to compensate the two grandsons and Mary for their said losses.

Nothing could be more foreign to the testator, D. C. Humphries' intention than to yield up all the real estate which S. P. Humphries devised to his wife, after paying his debts, and not charge her with the debts which he had liquidated out of his own means and which he intended his grandsons should have, therefore, Mrs. Margaret A. Humphries can only take the real estate of her deceased husband by paying to her two sons the bequest of the advances made by their grandfather to save it, and by paying to his executors the amount credited to his estate on account of these lands taken in his own name.

But as she cannot hold both against and under the will, and as she filed her petition asking an expounding of the will and her rights under it, before she be put upon her election, if she shall elect to hold under the will, of course the devisees will stand undisturbed, just as found in D. C. Humphries' will, but if she shall elect to take nothing by the will, then the third for life in the rents of the land devised to her will also become lapsed and be a part of the testator's estate undisposed of and subject to the devisees who have lost by this a portion of their legacies, before contribution is required from the legatees.

Wherefore, the judgment not being conformable to this opinion, it is reversed, with directions to put her upon her election whether she will hold under the will, or renounce its provisions so far as she is concerned, and if the latter, then proceed to ascertain her rights pusuant hereto, and to compel conveyances to her by the executors and legatees and heirs of said D. C. Humphries, of the lands so adjudged to her.

This cause should be referred to a commissioner to state the accounts and balances according to the principles herein announced. There should· be charged against Mrs. Humphries, in favor of D. C. Humphries' estate, all credits allowed S. P. Humphries on account of the lands adjudged to her, and then in favor of her two children all other sums which D. C. Humphries paid for S. P. Humphries over and above the assets in his hands; the debt to her mother which S. P. Humphries owed as third profits on the tract of land· belonged to this latter category.

*Kinkead & Buckner, for appellant.*

*Johnson, Hunt & Beck, for appellees.*